## No. 17,857.

ANTHONY E. REILLY, ET AL. *v.* HERBERT F. KORHOLZ, ET AL.

(320 P. [2d] 756)

Decided January 20, 1958.   Rehearing denied February 10, 1958.

Mr. James L. Tilly, Mr. Darrell J. Skelton, Mr. Alfred P. Davis, Mr. Thomas J. Gibson, Mr. William L. Walker, Mr. Earl Ludlam, for plaintiffs in error.

Messrs. Peterson & Evensen, Messrs. Seavy & Seavy, for defendants in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

The parties appear herein in the same order as in the trial court, and we shall refer to them as plaintiffs and

22

defendants, or by name, and shall refer to the defendant Reconstruction Finance Corporation as RFC.

Plaintiffs, on January 16, 1952, filed their complaint in the District Court at Pueblo, and charged the defendants generally with unlawfully conspiring, during the summer of 1951, to secure from plaintiffs all of their stock in the Rock Wool Insulating Company and claims for money due them from said company and to take possession and control of said company; that defendants did by such unlawful means cause the plaintiffs to sign documents labeled Exhibit "O," dated at New York August 3, 1951, and Exhibits "2" and "3" dated at Pueblo, Colorado, September 26, 1951, whereby Korholz obtained in his own name as owner 833⅓ shares, of a total of 2500 shares issued and outstanding, of the stock of said Rock Wool Insulating Company and obtained in his name as trustee 507-1/6 shares of said stock, the property of plaintiffs, and also obtained an assignment from plaintiffs of their alleged claims against the corporation for monies due them from the corporation in the amount of $43,000.00, evidenced by a promissory note given by Rock Wool Insulating Company to plaintiff Anthony E. Reilly; that he procured plaintiffs' resignations as officers and directors of said company. All of which, it is alleged, was accomplished without consideration by means of fraud, duress, threats, intimidation and force, and at a time when Anthony E. Reilly was ill and suffering from influenza.

Plaintiffs pray that the stock transfers, assignments of claims and resignations be set aside, and that they be restored to their previous positions as owners of said stock and claims and as officers and directors, or, in the alternative, that they recover compensatory damages of $650,000.00, exemplary damages of $500,000.00, and have body executions against the defendants Korholz, Becker and Gould.

From the record it appears that the defendant RFC at the time the suit was filed held 1340.5 shares of the

stock of the Rock Wool Insulating Company, which stock had been issued to and was then owned by plaintiffs, and which had been put up by plaintiffs as additional collateral with the RFC for certain loans made by it to the Rock Wool Insulating Company; that prior to the trial it had relinquished all claims to said stock and had deposited the certificates representing said stock with the clerk of the court to be by him held pending final disposition of the case. Thereupon, without objection, the case was dismissed as to the RFC. No service was ever had on defendants Clarence O. Dimmock, Jr., X Y Z Corporation, or First Doe and Second Doe, and the case as to these defendants was dismissed without prejudice and without objection. None of these defendants appear herein and each is improperly designated as a party to this proceeding.

The defendants Korholz, Becker, Gould and Rock Wool Insulating Company answered and denied all allegations of fraud, duress, etc., and set forth in detail events leading up to the execution of the documents providing for the transfers of stock and claims and resignations of the plaintiffs, and set forth the alleged considerations for the transfers and resignations.

At plaintiffs' request, trial was to a jury, and after eight days of taking testimony plaintiffs rested and stated that they abandoned their claim for compensatory and exemplary damages and body judgments, and relied entirely upon their equitable rights to the stock, their claims for money owing, and their positions as officers and directors; whereupon the jury was, by agreement, discharged. Testimony in behalf of defendants was taken and also rebuttal testimony.

On September 8, 1955, the trial court entered detailed findings of fact and conclusions of law and entered judgment for defendants.

The court, among other things, found: (a) that the defendants did not conspire to secure plaintiffs' stock and control of the corporation; (b) that no fraud, duress,

threats or intimidation was practiced by defendants; (c) that the plaintiffs' had voluntarily resigned their positions; (d) had voluntarily executed Exhibits "O," "2" and "3," whereby the stock in question was agreed to be transferred, and (e) that the defendant Korholz had complied with his agreement to lend financial aid to the Rock Wool Insulating Company, and that the same constituted a good and valuable consideration for the stock transfers and resignations.

The court decreed that defendant Korholz was entitled to have transferred to him *as his own* 833⅓ shares of the capital stock of the Rock Wool Insulating Company, then standing in the name of Anthony E. Reilly; that plaintiffs' agreements to assign the balance of their stock, 507-1/6 shares, to Herbert F. Korholz, as trustee, "are valid and of full force and effect." The court in its conclusions of law stated:

"The duties of the said defendant Korholz, as trustee, after receiving the stock referred to in paragraph 4 [833⅓ shares] are not determined herein."

■ Plaintiffs urge eight reasons for reversal. Reasons numbered 1, 2 and 8 are to the effect that the court erroneously determined questions of fact on which the evidence was in conflict. Counsel do not contend that the evidence is insufficient to sustain the court's findings, but take the untenable position that the trial court should have believed the testimony of plaintiffs and should have disbelieved the testimony of all the other witnesses, including that of several of plaintiffs' witnesses. At the risk of appearing dreary and trite, we reiterate our uniform pronouncement that findings of fact made by the trier of the facts, court or jury, will not be disturbed if supported by credible testimony. All of the court's findings of fact are amply supported by evidence in the record and will not be disturbed.

Point No. 4, presented and argued, is that: "The court erred in finding that Plaintiffs' Exhibit 'O' granted an option to buy 833⅓ shares of stock in Rock Wool

Insulating Company and that Exhibit 'O' was capable of being specifically enforced."

Nowhere in the record do we observe any finding that Korholz had an option to buy any stock; no purchase or sale was contemplated. Reilly agreed to transfer, without cost, 833⅓ shares of stock to Korholz on condition that Korholz forthwith advance $3500.00 to meet a then due payroll of Rock Wool Insulating Company (this sum was advanced), and on the further condition that Korholz "advance or cause to be made available to said corporation, financing to the extent of one hundred thousand dollars * * *."

It is noted that no time was fixed within which the specified financing was to be provided, and the trial court properly held that this required it to be furnished within a reasonable time. The evidence supports the court's finding that the financing was furnished within a reasonable time and in compliance with, and in fulfillment of, the contractual obligation of Korholz, who thereupon became the owner of and entitled to the 833⅓ shares of stock without cost as provided in said contract — Exhibit "O."

Why counsel argue that the contract was not capable of being specifically enforced is not clear. The defendants did not seek specific performance; in fact the defendants asked that plaintiffs' complaint be dismissed — nothing more. The court did not grant or undertake to grant specific performance of anything. Certificates for the 833⅓ shares of stock issued to the Reillys and by them endorsed in blank had been released by the RFC and deposited with the clerk of the court. After the judgment herein and after expiration of the stay of execution, said certificates were, on November 8, 1955, surrendered to the corporation and by it canceled, and on the same day the corporation issued and delivered to Korholz a new certificate for 833⅓ shares, and issued and delivered to Korholz, *as trustee,* an additional certificate for 507-1/6 shares. Specific performance was

neither requested nor granted and all argument with reference thereto is foreign to any issue presented by the record.

Point No. 5, presented and argued, is: "The court exceeded its jurisdiction in granting a decree which transcended the power conferred by law."

Counsel contend that the agreement, Exhibit "O," is illegal and void as against public policy in that Reilly agreed as a stockholder to vote for Korholz as a director. Korholz, simultaneous with the execution of Exhibit "O," advanced $3500.00 to Rock Wool Insulating Company so it could meet its payroll. Korholz agreed with Reilly that at Korholz's option he would provide desperately needed financing of $100,000.00 for Rock Wool Insulating Company. Reilly agreed to turn over to Korholz, free of cost, 833⅓ shares of a total of 1340.5 shares of stock, owned by Reilly and his wife, in return for this advance and financing. Certainly no one could contend that such an agreement is contrary to public policy. However, counsel point out that the agreement calls for something more:

"* * * In the event I [Korholz] exercise said option or call, you [Reilly] will vote your stock or otherwise cause my election to the Board of Directors of said corporation and cause my election as chairman thereof" and contend that this provision of the contract, made in the State of New York, violates the laws of New York, is contrary to public policy, unenforceable and vitiates and renders void the whole contract. Though not pled, proven or urged in the trial court, a New York statute apparently provides that:

"A stockholder shall not sell his vote or issue a proxy to vote for any sum of money or anything of value * * *."

By no stretch of the imagination can that law be construed to cover a situation such as we have in this case where Korholz, at Reilly's request, seeking to save the corporation from bankruptcy, wishes to be assured of authority to act to protect his own investment, pro-

tection of which necessarily inured to the benefit of all of the stockholders. Even if this portion of the agreement is contrary to public policy, it is severable and does not render the balance of the agreement void or contrary to public policy. Clearly the considerations are severable and the valid portions of the agreement are enforceable.

The general rule is stated in 17 C.J.S., page 674, §289, as follows:

"Where an agreement founded on a legal consideration contains several promises, or a promise to do several things, and a part only of the things to be done are illegal, the promises which can be separated, or the promise, so far as it can be separated, from the illegality, may be valid. The rule is that a lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration, * * *."

In *Carter v Thompkins*, 133 Colo. 279, 294 P. (2d) 265, we said:

"Certain portions of this contract being in contravention of the statute are unenforceable, but as to those portions not in violation of the licensing statute, the contract is severable and plaintiff may recover any unpaid balance due him for the materials furnished and labor performed not requiring the services of a licensed plumber. It would do violence to the letter and spirit of the law to hold otherwise * * *.

"The contract here is severable since plaintiff was furnishing and selling to defendant plumbing and furnace equipment and there being nothing about such transaction violative of any statutory enactment, we think plaintiff was entitled to recover for the materials furnished by him and for installing the furnace * * *."

Morever, plaintiffs, being parties to the alleged illegal provision, are in no position to urge the same and thus complain of their own wrong, and, as stated, defendants ask for no affirmative relief and Korholz is not seeking

28

enforcement of Reilly's promise to vote his stock in a certain way.

■ Point No. 6, presented and argued, is: "The court erred in finding that Margaret Regan Reilly ever resigned as an officer and from the Board of Directors of Rock Wool Insulating Company."

Margaret Regan Reilly in her complaint sets forth the fact that she was induced to and did resign as an officer. It would seem that the formal allegation in her complaint that *she had resigned* would now preclude her from urging as error the court's finding in accordance with her own allegation.

■ Point No. 7, presented and argued, is: "The court erred in finding that the purported meeting of directors of Rock Wool Insulating Company of October 9, 1951, was valid and effective as to the plaintiffs."

The validity of this meeting was never made an issue in the case by pleading or proof; the court made no findings with reference to said meeting, and counsels' argument relating thereto is wholly unwarranted and we do not consider it.

Point No. 3, presented and argued, is that: "The court erred in finding that the alleged assignments constituted valid and subsisting instruments raising a trust."

The court found: "That Defendants' Exhibits 2 and 3 [assigning all of the Reilly stocks and claims to Korholz, trustee] are valid and of full force and effect, * * *." and in its conclusions of law stated:

"5. The duties of the said defendant Korholz, trustee, after receiving the stock referred to in paragraph 4 are not determined herein."

The evidence is undisputed that prior to the execution of Exhibits "2" and "3," the Reillys were the owners of 507-1/6 shares of the stock of the Rock Wool Insulating Company, and that Korholz had no interest therein or any claim thereto; that at the same time each of the Reillys claimed to be a creditor of Rock Wool Insulating

Company and Korholz had no interest in the claims of either plaintiff against the corporation. The Reillys signed Exhibits "2" and "3," on September 26, 1951, wherein they each: "set over and assigned all stock * * * to Herbert F. Korholz of El Paso County, Colorado, as trustee, and I further transfer, set over and assign to the said Herbert F. Korholz, as trustee, * * * all claims against said Rock Wool Insulating Company * * *."

The purpose of the trust or the duties of the trustee are not stated in the instruments and the record is devoid of any definite evidence of its purpose or of his duties. Under such circumstances the trial court did not and could not determine the duties of Korholz as trustee. Furthermore, the documents being made expressly subject to the provisions of Exhibit "O" which fully protected and compensated Korholz, we find they were wholly lacking in consideration and are unenforceable.

Two days prior to the execution of these so-called trust agreements, Korholz had unsuccessfully endeavored to obtain Reilly's signature to a voting trust agreement, whereby Korholz would have held the stock of all stockholders in trust for a period of five years, the purpose being to give him voting power of *all the stock*. Korholz no doubt felt that such voting power was at least desirable if not absolutely necessary to a proper protection of his investment and to lend value to his 833⅓ shares of stock. This agreement was properly drawn and defined the rights and duties of the trustee and the beneficial owners of the stock and provided for the termination of the trust. Exhibits "2" and "3," which covered only the stock and claims of the Reillys against the corporation, were hurriedly drawn and, as appears from the record, were primarily for the purpose of giving Korholz voting power over Reilly's remaining stock which, together with Korholz's 833⅓ shares, constituted a majority of all the stock.

From the record, it further appears from Korholz's testimony that his purpose in seeking to hold the stock

and claims in trust was for the benefit of other stockholders who Korholz felt had suffered on account of Reilly having taken stock in excess of the value of property turned over by him to the corporation. If this did take place and Reilly's stock was not fully paid for, then the unpaid balance is a claim of the corporation against Reilly rather than a claim of other stockholders against him. If the stock held in trust is subject to any infirmities because of nonpayment or only partial payment therefor, then by the same token the 833⅓ shares acquired by Korholz, with full knowledge of the facts, are subject to the same infirmities. The agreements themselves, even though honestly and fairly obtained, are without consideration, they have no force or validity, and the stock and claims referred to in Exhibits "2" and "3" are the property of the Reillys and free of all claims thereto supposedly granted by said Exhibits "2" and "3."

The judgment of the trial court with reference to the 833⅓ shares of stock standing in the name of Herbert F. Korholz is affirmed with directions to the trial court to order and authorize delivery of stock certificate No. 60, evidencing ownership of said stock, to Herbert F. Korholz.

The judgment relating to Exhibits "2" and "3" is reversed and the trial court is directed to enter judgment holding the same to be void and directing Korholz to return to plaintiffs 507-1/6 shares of stock of the Rock Wool Insulating Company, and to return to each plaintiff any and all claims that either may have had against Rock Wool Insulating Company as of September 26, 1951.

It is further ordered that each party hereto pay his or her own costs in this court.

It is further ordered that the citation for contempt issued against Herbert F. Korholz by this court on January 3, 1957, is dismissed, the respondent discharged and he and his bondsmen released.

We note that plaintiffs in error have had four different firms of attorneys represent them in this case and it is

only fair to state that counsel appearing here did not participate in the proceedings in the trial court.

Nothing found or stated herein or in the orders of this court entered during the pendency of this action shall be considered as an adjudication of any matters arising between the parties hereto subsequent to January 16, 1952.

MR. JUSTICE FRANTZ not participating.