No. 20,370.

Anthony E. Reilly *v.* Cook McKay and Company.
(381 P. [2d] 261)

Decided May 6, 1963.

Messrs. Mellman, Mellman and Thorn, for plaintiff in error.

Mr. Gerald Harrison, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiff in error as Reilly or defendant, and to defendant in error as plaintiff.

Plaintiff is the assignee of James L. Tilly and Darrell J. Skelton, attorneys at law. The complaint consists of two claims based upon professional services rendered to Reilly by said attorneys. A bill of particulars concerning the said professional services was filed which contained the following:

"1. During the last week in October, 1955, the defendant met with James L. Tilly with respect to the handling of an appeal from the District Court for the District of Pueblo through the Colorado Supreme Court in the case of Reilly, et al., vs. Korholz, et al. It was agreed at that time that the fee for perfecting the writ of error to be paid to James L. Tilly and Darrell J. Skelton would be $3,000.00, together with a bonus to be determined at the time of the disposition of the case by the Colorado Supreme Court if the appeal were wholly or partially successful.

"2. The Colorado Supreme Court handed down its decision on January 20, 1958. On or about January 31, 1958, it was agreed by and between James L. Tilly and the defendant, in view of the disposition of the case, that a reasonable and fair bonus would be $2,500.00.

"3. On the original fee of $3,000.00, the defendant paid $250.00 on or about November 20, 1955. An additional $2,500.00 was paid toward the account on April 26, 1958.

"4. Additional work was done in connection with the condemnation of certain properties belonging to Rock Wool Insulating Company while the case was docketed with the Supreme Court pending its decision. Legal services for that work totaled $87.50, together with an additional $4.15 in expense. This work was done at the instance and request of the defendant."

The answer of the defendant was a general denial.

Trial was to the court and resulted in findings and judgment in favor of plaintiff in the sum of $2,841.65 plus interest from July 31, 1958.

A pre-trial conference was held June 1, 1961, and an order entered therein recites that:

"1. This is an action for recovery of attorneys' fees allegedly due and unpaid.

"2. There are no admitted facts.

\* \* \*

"5. Issues of law and fact: Whether, in fact, any agreement was ever made between plaintiff and defendant to pay for legal services in regard to *Reilly vs. Korholz*, 137 Colo. 20, 320 P. 2d 756, and related matters; and whether, if made, they were ever paid.

\* \* \*

"7. The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice."

At the trial it was established that defendant employed the firm of Tilly and Skelton to prosecute a writ of error to review a judgment of the district court of Pueblo county, Colorado, and that this employment concluded upon the announcement of the opinion in the case of *Reilly v. Korholz*, 137 Colo. 20, 320 P. (2d) 756. The result of the opinion was a partial victory for Reilly and his wife who recovered stock estimated by them to be worth $1,000,000.00. At the outset Reilly agreed to pay $1,500 to his attorneys to look into the matter, to preserve the rights of defendant to appellate review, and to render an opinion as to the possibility of success in review proceedings. It was also established that upon completing the preliminary work defendant agreed to pay an additional fee of $1,500 to prosecute the writ of error in the Supreme Court. The defendant admitted that he still owes Tilly and Skelton $87.50 in fees and

$4.15 expenses for incidental work, separate and apart from the appellate procedures.

Mr. Tilly testified: " * * * and after going through that and preparing our suggestions for appellate action, then Mr. Reilly wanted us to go ahead on the briefs themselves and carry the thing through the Supreme Court.

"Q. And what, if any, fee arrangements were discussed at that time?

"A. Well, we had considerable discussion about them and I felt that the work entailed here * * * was quite substantial, and I was talking initially in terms of fees of $5,000 or $6,000, including the first $1,500, and Mr. Reilly said he was in no position to pay that. * * * so finally we agreed to go ahead on the basis of an additional $1,500; that's $1,500 already outlined for the preservation of right to appeal and examination of the grounds for appeal, plus $1,500 more for carrying the thing through the briefs and argument in the Supreme Court, with the understanding that there would be a bonus if we were successful in the Supreme Court. We were unable, of course, to come to any specific agreement on the bonus, but Mr. Reilly's position was if he won the case he would be well off again; that, at the time, he had been denuded of everything he owned and was not in position to agree to a substantial fee, but he could agree to a bonus if the case was successful.

\* \* \*

"We had discussed it in my office; we had also discussed it in trips to Pueblo about that time. There were several trips necessary to Pueblo. The particular size of it, of course, had not been specified because we didn't know yet. * * * "

The full record contains evidence fully supporting the conclusion of the trial court that there was an agreement for the payment of an additional fee if Reilly was successful in the review proceedings, and that the amount thereof was to be determined when the litiga-

tion ended and the benefits derived therefrom could be appraised. With regard to the payment of the fixed fee of $3,000.00 to be paid in any event, one Floyd Rathbun guaranteed payment thereof and it was all paid to the attorneys, except $250.00.

Shortly after the announcement of the opinion in *Reilly v. Korholz,* supra, Tilly and Skelton were requested by Reilly to act in his behalf in new litigation deemed advisable as an aftermath of the opinion. However the attorneys were not interested since they had not yet been paid for past services, including a settlement on the bonus agreement. Thereupon the above mentioned Floyd Rathbun, who was a friend of Reilly and otherwise interested in the contemplated litigation, executed a document the intent and purpose of which was to guarantee the ultimate payment of a bonus fee of $2,500.00. There is ample evidence to support the findings that Reilly and his attorneys had agreed upon the sum of $2,500.00 as the bonus fee. The instrument executed by Rathbun reads as follows:

"PROMISSORY NOTE

$2,500.00                                      January 31, 1958

"On on before six months from date, I promise to pay to James L. Tilly and/or Darrell J. Skelton, or order, the sum of Two Thousand Five Hundred and no/100 Dollars ($2,500.00) as and for agreed bonus legal fees in the case of Reilly vs. Korholz, Colorado Supreme Court No. 17857. This note is over and above my existing agreement with Tilly and Skelton for payment of other legal fees in the same case. PROVIDED, HOWEVER, that if any part of the said $2,500.00 shall be paid to the payees herein by or on behalf of Anthony E. Reilly prior to the due date hereof, the undersigned shall be relieved from liability hereon to the extent of such other payment.

"Due: July 31, 1958                    Floyd Rathbun"

As grounds for reversal of the judgment counsel for Reilly argues:

1. That the above-quoted instrument executed by Rathbun on January 31, 1958, amounted to "payment" of any amount due from Reilly on the bonus agreement; and that the acceptance of the guaranty by Reilly's attorneys, " * * * in a sense constituted a novation."

2. That the record fails to disclose any consideration for the agreement of Reilly to pay $2,500.00 as a bonus attorneys' fees.

3. That Cook, McKay and Company, the assignee of Tilly and Skelton, in bringing the action was acting as a collection agency and was without authority to bring the action for the reason that it had no license to act as a collection agency as required by C.R.S. '53, 28-1-1.

█ With reference to point one above, we think it sufficient to direct attention to the opinion of this court in *Temple v. Teller Lumber Co.,* 46 Colo. 497, 106 Pac. 8, from which we quote the following:

" * * * For the purposes of this branch of the case, it may be taken as true that such payment was assumed. We observe, first, that the answer of the Reduction Company is merely a general denial, and it would seem that a novation and substitution, being in the nature of a release or discharge, is new matter and should be specially pleaded. — 18 Enc. Pl. & Pr. 89; Bliss on Code Pleading (3d ed.), §340. If, however, this defense had been pleaded, the evidence altogether fails to establish it. *There can be no novation and substitution in law unless the original debtor, the original creditor and the new debtor have all entered into such an agreement.* — 29 Cyc. 1129; 21 Am. & Eng. Enc. of Law (2d ed.) 659. There is no evidence here either that the Reduction Company, the original debtor, or the plaintiff, the creditor, agreed to the alleged novation and substitution." (Emphasis supplied.)

█ With reference to the contention that there was no consideration for the promise of Reilly to pay a bonus fee in the event of success in prosecuting the writ of error, we need only say that the argument is without

merit. The agreement for the bonus was an integral part of the contract of employment.

The trial court held that the provisions of C.R.S. '53, 28-1-1 were inapplicable to the case. In so holding, no error was committed. C.R.S. '53, Rule 9(a)(1) provides:

"It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued * * * he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge, and on such issue the party relying on such capacity, authority, or legal existence, shall establish same on the trial."

No issue concerning the capacity of plaintiff to sue was raised by the pleadings, and the pre-trial order did not permit extension of the issues beyond those stated in that order. This is not an action to determine the legality of the assignment contract between the plaintiff and Tilly and Skelton; nor is the action one to invoke a penalty against the plaintiff for a violation of C.R.S. '53, 28-1-1, et seq. The assignment from Tilly and Skelton to plaintiff is admitted. The only contractual rights and liabilities involved in this controversy are those arising out of the relation between Reilly on the one hand and Tilly and Skelton on the other. Under the issues as framed, plaintiff was entitled to recover any amount which was found to be due and owing to Tilly and Skelton at the time of the assignment from them to him.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANTZ and MR. JUSTICE SUTTON not participating.