Joyce L. **ALLELY** and Donald K. **Griffin**, Plaintiffs–Appellants,

v.

**CITY OF EVANS**, Defendant–Appellee.

No. 04CA1608.

Colorado Court of Appeals, Div. III.

Oct. 6, 2005.

**912**

Holland & Hart, LLP, Craig M.J. Allely, Kristin Baker White, Denver, Colorado; J. Bryan Larson, Brighton, Colorado, for Plaintiffs–Appellants.

R. Russell Anson, Greeley, Colorado, for Defendant–Appellee.

CASEBOLT, J.

In this case involving a petition to disconnect land from a city, plaintiffs, Joyce L. Allely and Donald K. Griffin, appeal the judgment in favor of defendant, the City of Evans, in which the court denied their request. We affirm.

Plaintiffs own three contiguous parcels of land aggregating 112 acres within the city limits of Evans, Colorado, a home rule city.

Relying upon § 31–12–601, C.R.S.2005, which provides a procedure for disconnection of land from cities under specified circumstances, plaintiffs requested the court to order disconnection.

At the time plaintiffs filed this action, the City had no ordinance or charter provision in effect governing disconnection. However, three months after the filing, but before the hearing on plaintiffs' petition, the City passed its own ordinance governing disconnection, which prescribed substantive requirements different from those contained in § 31–12–601.

After an evidentiary hearing, the court concluded that the state disconnection statute applied only to statutory cities and not to home rule municipalities. Alternatively, the court held that if the statute applied, the Evans ordinance superseded the statute and that plaintiffs had failed to comply with its provisions. Accordingly, the court denied the petition, and this appeal followed.

■ Plaintiffs contend that § 31–12–601 applies to home rule municipalities and, therefore, the trial court erred in denying their request. We disagree.

Article XX, § 6 of the Colorado Constitution, which authorizes home rules cities and towns, states: "The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except insofar as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters." Accordingly, we must determine whether § 31–12–601 is applicable, and if so, whether the Evans ordinance superseded its provisions.

■ We review the construction of statutes de novo. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220 (Colo.2005). In construing a statute, our goal is to determine and give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme. *People v. Yascavage*, 101 P.3d 1090 (Colo.2004).

■ To effectuate the legislative intent, a statute must be read and considered as a whole and should be interpreted so as to give

consistent, harmonious, and sensible effect to all its parts. *State v. Nieto,* 993 P.2d 493 (Colo.2000). If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *People v. Cooper,* 27 P.3d 348, 354 (Colo.2001).

■ If, however, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *People v. Terry,* 791 P.2d 374 (Colo.1990). If the language of a statute is ambiguous or conflicts with other provisions, we then look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme. *People v. Luther,* 58 P.3d 1013 (Colo.2002).

Section 31–12–601 provides:

When a tract or contiguous tracts of land, aggregating twenty or more acres in area, are embraced within the municipal limits of any city, which are upon or contiguous to the border thereof, the owners of said tracts of land may petition the district court for the county in which such land, or any part thereof, is situated to have the same disconnected from said city.

The statutes then prescribe the conditions under which disconnection is allowed.

As pertinent here, "city" is defined as a "municipal corporation," but the term specifically does not include "any city ... which has chosen to adopt a home rule charter pursuant to the provisions of article XX of the state constitution." Section 31–1–101(2), C.R.S.2005.

By its express terms, § 31–12–601 contemplates disconnection from a "city" and the applicable definition of "city" excludes home rule municipalities. Accordingly, the statute does not apply to disconnection from home rule municipalities.

■ Further, it is presumed that the legislature has knowledge of the legal import of the words it uses and that it intends each part of a statute to be given effect. *See City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo.1996), *disapproved of on other grounds by Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000). We can presume that by defining "city" to exclude home rule municipalities and then employing that term in the disconnection statute, the General Assembly intended to limit the application of the disconnection statute to statutory cities. Moreover, in its definition of terms, the General Assembly defined a "municipality" to include a city or town that has chosen to adopt a home rule charter. *See* § 31–1–101(6), C.R.S.2005. Hence, the fact that the General Assembly did not choose to use the word "municipality" in § 31–12–601 is significant.

■ Our interpretation is consistent with the heading of § 31–12–601, "Disconnection by Court Decree—Statutory Cities." Generally, where headings are added by the revisor of statutes, no implication or presumption of a legislative construction is to be drawn therefrom. *See* § 2–5–113, C.R.S. 2005. However, when, as here, the General Assembly specifically selects a heading, we may consider it as an aid in construing a statute. *U.M. v. Dist. Court,* 631 P.2d 165 (Colo.1981).

Plaintiffs assert that such a construction runs contrary to the provisions of § 31–1–102, C.R.S.2005. They assert that the cited provision evidences a legislative intent to apply all the provisions in Title 31 to home rule municipalities, thus making § 31–12–601 applicable. We disagree.

Section 31–1–102(1), C.R.S.2005, provides, in pertinent part:

In the recodification of this title, certain provisions which previously applied or may have been interpreted to apply to limited categories of municipalities have been applied to all municipalities, whether statutory, home rule or special territorial charter. Except for those provisions which expressly apply only to limited categories of municipalities, it is the intent of the general assembly that the provisions of this title shall apply to home rule municipalities except insofar as superseded by charter or ordinance .... The general assembly further declares that in the recodification of

this title and in the use of the term "municipality" in this title there is no legislative intent to affect or modify the application of the provisions of this title with respect to preemption of home rule ... powers, which preemption may or may not have existed on [July 1, 1975]. The use of the term "municipality" in future additions or amendments to this title shall not in and of itself create a presumption for or against preemption of home rule ... powers.

The foregoing provision expresses a general legislative intent that all of Title 31 should apply to home rule municipalities. However, it explicitly excepts from that general intent "those provisions which expressly apply only to limited categories of municipalities." As noted above, the disconnection statute applies only to a limited category of municipal entities, that is, statutory cities. Therefore, the general intent expressed in § 31–1–102 does not apply here.

Moreover, if we were to interpret § 31–1–102 in the manner asserted by plaintiffs, it would arguably conflict with the express terms of the disconnection statute or at a minimum would create ambiguity as to its effect. In such circumstances, we may resort to legislative history, which, here, supports our interpretation.

The legislative hearings on the recodification of Title 31 make it clear that by enacting § 31–1–102, the General Assembly was not attempting to change the meaning of the statutes as they existed before the recodification. The testimony and discussion note that wherever in the title the word "city" is used without a modifier, only statutory cities are affected. See Hearings on H.B. 75–1089 before the House Local Government Committee, 50th General Assembly, 1st Session (Feb. 12, 1975).

Here, the term "city" in the disconnection statute is used without a modifier. Hence, that statute is applicable only to statutory cities.

Accordingly, because the disconnection statute did not apply, the trial court could not order disconnection under that provision. See City of Littleton v. Wagenblast, 139 Colo.

346, 338 P.2d 1025 (1959)(the power of disconnection is legislative, and absent an express statutory authorization, courts lack jurisdiction to order it). Thus, the trial court did not err in denying the petition.

In light of this disposition, and because plaintiffs do not contend that they have met the provisions of the City ordinance, we need not address the applicability of the City ordinance, the trial court's alternative interpretation, or the remaining contentions of the parties.

The judgment is affirmed.

Judge TAUBMAN and Judge HAWTHORNE concur.