**Adam SHOTKOSKI and Anita Shotkoski, Plaintiffs–Appellees,**

v.

**DENVER INVESTMENT GROUP INC.; Gary Clark; Zone 93, Inc.; and Victoria Thomas, Defendants–Appellants.**

No. 04CA1729.

Colorado Court of Appeals, Div. II.

Feb. 23, 2006.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Underhill & Underhill, P.C., Joanne P. Underhill, Dana M. Arvin, Greenwood Village, Colorado, for Plaintiffs–Appellees.

Bloom Murr & Accomazzo, P.C., Joseph A. Murr, Michael G. Milstein, Denver, Colorado, for Defendant–Appellants.

ROTHENBERG, J.

In this breach of contract action, defendants, Denver Investment Group, Inc. (DIG); Gary Clark; Zone 913, Inc.; and Victoria Thomas, (collectively defendants) appeal the trial court's order denying their motion to compel plaintiffs, Adam and Anita Shotkoski, to arbitrate their claims. We reverse and remand with directions.

In 1994, Adam Shotkoski (Shotkoski) purchased a home. He later fell behind on the mortgage payments, and a foreclosure proceeding was initiated. However, before the foreclosure sale, Victoria Thomas contacted Shotkoski and negotiated the purchase of the home by DIG. Gary Clark was an agent of DIG. Thomas was a major shareholder of Zone 913 and an agent of DIG. Zone 913

received commissions from DIG for negotiating real estate acquisitions on behalf of DIG.

Shotkoski and DIG entered into a contract (Customer Agreement) for the sale of the home. Pursuant to the Customer Agreement, Shotkoski transferred title to DIG by warranty deed in exchange for $24,000 that was to be paid in two installments of $12,000. The Customer Agreement also required the parties to arbitrate all claims pertaining to the transaction.

After the sale, Adam and Anita Shotkoski divorced, and during the dissolution of marriage proceedings, Anita Shotkoski filed a lis pendens, which created a cloud on the title to the Shotkoski home. DIG claimed that this impaired its ability to sell the property, and refused to pay Shotkoski the $12,000 balance due under the Customer Agreement.

Adam and Anita Shotkoski then filed this action against defendants, alleging several claims. With respect to the contract issue, they sought recovery of the unpaid $12,000 owed on the contract, and they alternatively sought rescission. Defendants moved to compel arbitration, and Shotkoski objected, contending the contract was illegal and unenforceable because defendants had failed to obtain the real estate licenses required for the sale, and because of defendants' alleged violation of the Colorado Consumer Protection Act.

No one has challenged the standing of Clark, Zone 913, or Thomas to move to compel arbitration, and we therefore do not address that issue on appeal.

Following an evidentiary hearing on defendants' motion to compel arbitration, the court found that (1) none of the defendants was a licensed real estate broker when Shotkoski signed the Customer Agreement; (2) the Customer Agreement was illegal and unenforceable because of defendants' failure to obtain the required real estate licenses; and (3) defendants had engaged in a deceptive trade practice by purchasing real estate without the required licenses. Based on those findings, the court denied defendants' motion to compel arbitration.

## I.

Defendants contend the trial court erred in denying their motion to compel arbitration. They maintain that the validity the Customer Agreement is unaffected by the fact that they were not licensed real estate brokers. We agree.

## A.

■ As a threshold matter, we observe that generally, in a breach of contract action, the party not at fault may disaffirm the contract, rescind, and recover the money paid. Alternatively, the party not at fault may affirm the contract and sue for specific performance or for damages. *Wood v. Ellis,* 114 Colo. 19, 161 P.2d 777 (1945). Therefore, a plaintiff is required to make an election between a claim for rescission and one based on either specific performance or damages. *Cooper v. Peoples Bank & Trust Co.,* 725 P.2d 78, 80 (Colo.App.1986).

■ Here, the trial court ruled before Shotkoski was required to make such an election. Nevertheless, to the extent he is seeking to enforce the Customer Agreement and recover the $12,000 balance owed, he may not separately attack the arbitration clause. *See Cooper v. Peoples Bank & Trust Co., supra.* We address Shotkoski's challenge to the arbitration clause based only on his allegation that the Customer Agreement is illegal and unenforceable and that he is entitled to rescission on that basis.

## B.

■ The arbitrability of a claim is a question of law we review de novo. *Jefferson County Sch. Dist. No. R–1 v. Shorey,* 826 P.2d 830 (Colo.1992); *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.,* 98 P.3d 915 (Colo.App.2004).

■ In considering a motion to compel, the trial court must first determine whether a valid agreement to arbitrate exists between the parties. *Eychner v. Van Vleet,* 870 P.2d 486 (Colo.App.1993).

■ The court may refuse to compel arbitration only upon a showing that (1) there is no agreement to arbitrate, or (2) the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision. *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc., supra; see Huizar v. Allstate Ins. Co.,* 952 P.2d 342 (Colo.1998)(arbitration is a favored policy in Colorado, and when courts are presented with an agreement to arbitrate specified disputes, all doubts should be resolved in favor of the claim's arbitrability).

Section 12–61–102, C.R.S.2005, provides that "[i]t is unlawful for any person, firm, partnership, limited liability company, association, or corporation to engage in the business or capacity of real estate broker or real estate salesperson in this state without first having obtained a license from the real estate commission." A real estate broker is defined as any person who engages in negotiations for the purchase of real estate in exchange for a fee. Section 12–61–101(2)(d), C.R.S. 2005.

■ It is well settled that an agreement to compensate an unlicensed real estate broker is illegal and unenforceable. *Benham v. Heyde,* 122 Colo. 233, 221 P.2d 1078 (1950); *Holter v. Moore & Co.,* 681 P.2d 962 (Colo. App.1983); *Goodfellow v. Kattnig,* 533 P.2d 58 (Colo.App.1975)(not published pursuant to C.A.R. 35(f)); *Brakhage v. Georgetown Assocs., Inc.,* 33 Colo.App. 385, 523 P.2d 145 (1974); *Reed v. Bailey,* 34 Colo.App. 20, 524 P.2d 80 (1974). However, there are no Colorado cases addressing whether an illegal agreement for real estate brokerage services, by itself, invalidates or requires rescission of the underlying contract.

Shotkoski relies on *Guardian Title Agency, LLC v. Matrix Capital Bank,* 141 F.Supp.2d 1277 (D.Colo.2001), for the proposition that a violation of the licensing statutes renders the Customer Agreement illegal and unenforceable, but that case is factually distinguishable.

In *Guardian Title,* which was not an arbitration case, a title agency conceded that it did not comply with Colorado's good funds statute, § 38–35–125, C.R.S.2005, by failing to require good funds at a closing. The title agency further conceded that it disbursed funds and delivered the buyer's promissory

note and deed of trust without waiting for the broker's check to clear.

Despite its admission that it had "unclean hands," the title agency sued the mortgagor, seeking return of the promissory note, reformation of the deed of trust, and monetary damages. The district court dismissed the title company's claims, concluding those claims resulted from the escrow agent's own illegal conduct.

In this case, Thomas did not have a broker's license at the time she negotiated the sale of Shotkoski's home, and DIG agreed to compensate her for negotiating real estate acquisitions. But the agreement between Thomas and DIG is separate from the Customer Agreement between DIG and Shotkoski. Also, the arbitration agreement contained in the Customer Agreement here is independent of Thomas's failure to comply with the brokers' licensing statute. Unlike in *Guardian Title*, where the transaction proceeded without good funds, the Customer Agreement here was also supported by valid consideration. For these reasons, we conclude *Guardian Title* does not support Shotkoski's position.

In *United National Bank v. Airport Plaza Ltd. Partnership*, 537 So.2d 608 (Fla.Dist.Ct. App.1988), however, the court specifically addressed and rejected the same argument made by Shotkoski here, namely, that an illegal agreement for real estate brokerage services, by itself, requires rescission of the entire contract.

There, the bank filed a foreclosure action after a default in payments. As a defense to the foreclosure action, the defendant raised several alternative bases for rescission, including the fact that the management agreement between the original parties required brokerage services to be performed. The defendant maintained that the failure of a party to obtain a valid broker's license before execution of the agreement rendered the entire real estate transaction void.

The Florida court disagreed, and concluded that an illegal agreement for real estate brokerage services, by itself, does not require rescission of the entire contract. The court reasoned, "[T]he illegal brokerage ser-

vice portion of the contract does not go to the essence of the agreement—a multimillion dollar sale of real estate. If the broker service agreement is severed, the agreement for the sale of real estate is still wholly supported by valid legal consideration." *United Nat'l Bank v. Airport Plaza Ltd. P'ship, supra,* 537 So.2d at 610.

Similarly, courts in other jurisdictions have upheld the validity of underlying contracts, even where services were performed in violation of licensing statutes. *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 525 (1976)(holding that an architect's violation of a licensing statute did not render the contract to perform architectural services void and unenforceable); *McKenna v. Peddle Land Devs.,* 229 A.2d 332 (Me.1967)(holding that a contract for sale of real estate was not void where the broker failed to obtain the required licenses).

The reasoning of these courts is consistent with general principles of severability in contract interpretation. *Reilly v. Korholz,* 137 Colo. 20, 320 P.2d 756 (1958)(lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time and for the same consideration); *Local No. 234 of United Ass'n of Journeymen v. Henley & Beckwith, Inc.,* 66 So.2d 818 (Fla.1953)(contract will be enforced where illegal portion does not go to essence of the contract and where it is still supported by valid legal promises on both sides after illegal portion is eliminated); *Slusher v. Greenfield,* 488 So.2d 579 (Fla. Dist.Ct.App.1986) (same).

Shotkoski's argument, if successful, would affect the security and marketability of titles to real property by invalidating real estate transactions containing agreements to compensate unlicensed real estate brokers. Potential buyers conducting a title search would have no formal way to find such potential encumbrances.

As a division of this court stated in *Strekal v. Espe,* 114 P.3d 67, 73 (Colo.App.2004): [T]he security and marketability of real estate titles [are] an "essential state interest." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 544, 114 S.Ct. 1757, 1764, 128 L.Ed.2d 556 (1994). This interest is best

served by a bright line rule that enables potential buyers to determine the validity of a title and its potential encumbrances. *Lobato v. Taylor,* 71 P.3d 938, 964 (Colo. 2002) .... The recording act is an essential part of a scheme "intended to ensure titles to real property are secure and marketable." *Lobato v. Taylor, supra,* 71 P.3d at 964.

We are persuaded by the reasoning of the Florida court in *United Nat'l Bank v. Airport Plaza Ltd. Partnership, supra,* and we adopt its holding as our own. We conclude as a matter of law that (1) Thomas's failure to obtain a broker's license and the agreement for her brokerage services did not invalidate the Customer Agreement; and (2) the validity of the Customer Agreement was also unaffected by the fact that DIG was not a licensed broker.

Therefore, we reverse the trial court's ruling denying arbitration on this basis.

## II.

Defendants also contend the trial court erred in denying arbitration based upon their alleged violation of the Colorado Consumer Protection Act. We agree.

The Act provides that a person engages in a deceptive trade practice when he or she "[r]efuses or fails to obtain all governmental licenses or permits required to perform the services or to sell the goods, food, services, or property as agreed to or contracted for with a consumer." Section 6–1–105(1)(z), C.R.S.2005.

The trial court ruled that it was "a deceptive trade practice to fail to gain a governmental license required by law to practice the purchase and sale of real estate." However, contrary to the trial court's assertion, § 6–1–105(1)(z) does *not* apply to real estate purchases. It applies to the performance of services and the sale of property.

Accordingly, we conclude the trial court erred in denying arbitration on that basis. *Cf. Breaker v. Corrosion Control Corp.,* 23 P.3d 1278, 1283 (Colo.App.2001)(division assumed that claims alleging a violation of the deceptive trade practices statute were arbitrable, especially when "the arbitration clause extends to disputes that 'relate to' the contract in which it is found").

The order is reversed, and the case is remanded to the trial court with directions to grant defendants' motion to compel arbitration.

Judge DAILEY and Judge LOEB concur.