**AMEDEUS CORPORATION, a Colorado corporation, Plaintiff–Appellant,**

v.

**Chuck McALLISTER, a/k/a Charles McAllister, Defendant–Appellee.**

No. 07CA2476.

Colorado Court of Appeals, Div. V.

Feb. 19, 2009.

Certiorari Denied June 22, 2009.

Helmer & McElyea, LLC, David A. Helmer, Natalie J. French, Frisco, Colorado, for Plaintiff-Appellant.

Mulliken Weiner Karsh Berg & Jolivet, P.C., Gregory M. O'Boyle, Joseph L. Lambert, Colorado Springs, Colorado, for Defendant-Appellee.

Opinion by Judge GRAHAM.

In this action to recover a finder's fee, plaintiff, Amedeus Corporation, appeals the trial court's order dismissing its complaint against defendant, Chuck McAllister, and denying its demand to arbitrate. We affirm.

McAllister is the managing member of Viewpoint Estates, LLC, which owned certain real property located in El Paso County, known as the Viewpoint Village Project. Gene Kotlarek is a principal of Amedeus.

By agreement, McAllister engaged Amedeus to find and introduce to McAllister "individuals and/or parties who may have an interest in acquiring, investing or becoming financially involved with" McAllister. The agreement stated that if Amedeus introduced an individual or company to McAllister and that party became "financially involved in any matter," Amedeus was entitled to a finder's fee of five percent of all proceeds resulting from the sale of the Viewpoint Village Project. Neither Amedeus nor Kotlarek was a licensed Colorado real estate broker at any relevant time.

Kotlarek, on behalf of Amedeus, introduced McAllister to Rodney Hoover, a real estate developer and a potential buyer and investor for the Viewpoint Village Project. Subsequently and unbeknownst to Kotlarek, the Viewpoint Village Project was sold to Randy Case, a close friend of the McAllister family. Kotlarek continued to work with Hoover. Ultimately, the Viewpoint Village Project was sold to a group of individuals known as the Simon Maulk family. They are real estate developers and allegedly business partners of Hoover. Thereafter, Amedeus requested McAllister to pay the finder's fee of five percent pursuant to the agreement.

When McAllister failed to pay Amedeus, Amedeus made a written demand for arbitration pursuant to the arbitration provision in the agreement. McAllister refused to arbitrate.

Amedeus then filed a complaint for breach of contract and quantum meruit and sought an order compelling arbitration. McAllister filed a motion to dismiss, arguing that the agreement was illegal and unenforceable because it was an agreement to compensate an unlicensed real estate broker.

After a hearing, the trial court found that Kotlarek was acting as a real estate broker as defined in section 12–61–101(2), C.R.S.

2008. The trial court thus determined that the agreement was illegal and unenforceable and dismissed the complaint.

This appeal followed.

## I. Validity of Finder's Fee Agreement

Amedeus contends that the trial court erred in concluding that the finder's fee agreement was illegal and consequently denying its motion to compel arbitration. It maintains that the trial court erroneously determined that Kotlarek acted as a real estate broker within the definition set forth in section 12–61–101(2) and, thus, the agreement was void and unenforceable. We disagree.

■ The arbitrability of a claim is a question of law we review de novo. *Jefferson County Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 838 (Colo.1992); *Shotkoski v. Denver Inv. Group Inc.*, 134 P.3d 513, 515 (Colo. App.2006).

■ In considering a motion to compel arbitration, the trial court must first determine whether a valid agreement to arbitrate exists between the parties. *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo.App.1993).

■ The court may refuse to compel arbitration only upon a showing that (1) there is no agreement to arbitrate, or (2) the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision. *Shotkoski*, 134 P.3d at 515.

■ Where, as here, a party asserts that the entire contract is illegal, the court must determine this threshold issue. Contracts in violation of statutory prohibitions are void, and issues arising under such contracts are therefore not arbitrable. *R.P.T. of Aspen, Inc. v. Innovative Commc'ns, Inc.*, 917 P.2d 340, 342 (Colo.App.1996).

■ It is well settled that an agreement to compensate an unlicensed real estate broker is illegal and unenforceable. *Benham v. Heyde*, 122 Colo. 233, 240, 221 P.2d 1078, 1081 (1950); *Shotkoski*, 134 P.3d at 515; *Holter v. Moore & Co.*, 681 P.2d 962, 965 (Colo. App.1983); *Goodfellow v. Kattnig*, 533 P.2d 58, 59 (Colo.App.1975) (not published pursu-

ant to C.A.R. 35(f)); *Reed v. Bailey*, 34 Colo. App. 20, 22, 524 P.2d 80, 81 (1974); *Brakhage v. Georgetown Assocs., Inc.*, 33 Colo.App. 385, 387, 523 P.2d 145, 146 (1974); *see also* § 12–61–102, C.R.S.2008 ("It is unlawful for any person, firm, partnership, limited liability company, association, or corporation to engage in the business or capacity of real estate broker in this state without first having obtained a license from the real estate commission.").

As relevant here, "real estate broker" or "broker" is defined as

any person, firm, partnership, limited liability company, association, or corporation who, in consideration of compensation by fee, commission, salary, or anything of value or with the intention of receiving or collecting such compensation, engages in or offers or attempts to engage in, either directly or indirectly, by a continuing course of conduct or by any single act or transaction, any of the following acts:

· · ·

(IV) Negotiating the purchase, sale, or exchange of real estate, or interest therein, or improvements affixed thereon;

· · ·

(IX) Negotiating or attempting or offering to negotiate the listing, sale, purchase, exchange, or lease of a business or business opportunity or the goodwill thereof or any interest therein when such act or transaction involves, directly or indirectly, any change in the ownership or interest in real estate, or in a leasehold interest or estate, or in a business or business opportunity which owns an interest in real estate or in a leasehold unless such act is performed by any broker-dealer licensed under the provisions of article 51 of title 11, C.R.S., who is actually engaged generally in the business of offering, selling, purchasing, or trading in securities or any officer, partner, salesperson, employee, or other authorized representative or agent thereof.

§ 12–61–101(2)(a)(IV), (IX), C.R.S.2008 (formerly codified at § 12–61–101(2)(d), (i)).

Here, it is undisputed that neither Amedeus nor Kotlarek had a real estate broker's license at any relevant time, and McAllister

agreed to compensate Amedeus for finding and introducing to McAllister individuals who had an interest in acquiring, investing, or becoming financially involved with McAllister and the Viewpoint Village Project—which was a real estate development project—and who in fact became financially involved "in any manner." We assume, for the sake of argument, that Hoover was a business associate of the ultimate buyer of the Viewpoint Village Project.

■ Amedeus contends, however, that Kotlarek's activities did not come within the statutory definition of "real estate broker" because he served only as a business consultant "to develop financial involvement in the land" and "to find the money, bring the investor in." Amedeus argues that Kotlarek did nothing more than introduce Hoover to McAllister and that Hoover later became financially involved in the Viewpoint Village Project. It suggests that we recognize a distinction between a business consultant who merely introduces prospective buyers and sellers and a real estate broker who participates in the details of the transaction.

We are not persuaded by Amedeus's argument. The statutory definition of real estate broker does not recognize any distinction between a broker and a finder as urged by Amedeus. *See Brakhage,* 33 Colo.App. at 388, 523 P.2d at 147. On the contrary, the legislature created certain statutory exemptions to the definition of real estate broker and, as explained below, those exemptions do not include the type of activity at issue here.

More important, the legislative history of section 12–61–101(2) reveals a legislative intent to enlarge and extend the definition of the term "real estate broker" to include the full spectrum of activities related to the sale of real estate. As previously mentioned, the definition of a "real estate broker" includes one "who, in consideration of compensation by fee, commission, salary, or anything of value or with the intention of receiving or collecting such compensation" negotiates the sale or purchase of real estate or a business or a business opportunity "when such act or transaction involves, directly or indirectly, any change in the ownership or interest in real estate" or "in a business or business opportunity which owns an interest in real estate." § 12–61–101(2)(a)(IV), (IX).

■ The term "negotiate," as it pertains to licensing, "includes the act of bringing two parties together for the purpose of consummating a real estate transaction." *Brakhage,* 33 Colo.App. at 389, 523 P.2d at 147; *see also Barton v. Sittner,* 723 P.2d 153, 154 (Colo. App.1986); *cf. Stank v. Michaelson,* 32 Colo.App. 75, 77, 506 P.2d 757, 759 (1973) (the definition of "broker" includes one who finds "the person to whom to sell, or from whom to buy, as the case may be").

Kotlarek introduced McAllister and Hoover for the purpose of consummating a real estate transaction; specifically, Kotlarek introduced Hoover to McAllister as someone who might acquire, invest, or become financially involved with McAllister and, in turn, the Viewpoint Village Project. Kotlarek's actions involved the negotiation of a change in ownership of a business or business opportunity which included an interest in real estate. Under these circumstances, we conclude that Kotlarek's activities fell within the definition of a real estate broker.

Because it is undisputed that neither Amedeus nor Kotlarek had a broker's license at any relevant time, dismissal of the complaint was proper here if Amedeus and Kotlarek are not otherwise exempted from the requirements of the licensing statute.

To establish its exemption from the requirements of the statute, Amedeus relies upon the exclusion set forth in section 12–61–101(2)(b)(XV), C.R.S.2008 (formerly codified at section 12–61–101(4)(p)), which excludes from the licensing requirements "[a] sole proprietor, corporation, partnership, or limited liability company, acting through its officers, partners, or regularly salaried employees, with respect to property located in Colorado, where the purchaser of such property is in the business of developing land for residential, commercial, or industrial purposes."

We review the construction of statutes de novo. *Lobato v. Indus. Claim Appeals Office,* 105 P.3d 220, 223 (Colo.2005). In construing a statute, our goal is to determine and give effect to the intent of the legislature

and adopt the statutory construction that best effectuates the purposes of the legislative scheme. *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004); *Allely v. City of Evans,* 124 P.3d 911, 912 (Colo.App.2005).

To effectuate the legislative intent, a statute must be read and considered as a whole and should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000); *Allely,* 124 P.3d at 912–13.

We presume that the General Assembly intended a just and reasonable result. We avoid interpretations that lead to an illogical or absurd result. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1192 (Colo.1996).

If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *People v. Cooper,* 27 P.3d 348, 354 (Colo. 2001); *Allely,* 124 P.3d at 913.

The exclusion set forth in section 12–61–101(2)(b)(XV) must be read in conjunction with the other exclusionary provisions. Specifically, as relevant here, the statute provides that "[r]eal estate broker" does not apply to:

(IV) Any person, firm, partnership, limited liability company, or association acting personally or a corporation acting through its officers or regular salaried employees, on behalf of that person or on its own behalf as principal in acquiring or in negotiating to acquire any interest in real estate;

. . .

(VII) A natural person acting personally with respect to property owned or leased by that person or a natural person who is a general partner of a partnership, a manager of a limited liability company, or an owner of twenty percent or more of such partnership or limited liability company, and authorized to sell or lease property owned by such partnership or limited liability company, except as provided in subsection (1.5) of this section;

. . .

(IX) A principal officer of any corporation with respect to property owned by it when such property is located within the state of Colorado and when such principal officer is the owner of twenty percent or more of the outstanding stock of such corporation, except as provided in subsection (1.5) of this section, but this exemption does not include any corporation selling previously occupied one-family and two-family dwellings;

(X) A sole proprietor, corporation, partnership, or limited liability company, acting through its officers or partners, or through regular salaried employees, with respect to property owned or leased by such sole proprietor, corporation, partnership, or limited liability company on which has been or will be erected a commercial, industrial, or residential building which has not been previously occupied and where the consideration paid for such property includes the cost of such building, payable, less deposit or down payment, at the time of conveyance of such property and building;

(X)(A) A corporation, partnership, or limited liability company acting through its officers, partners, managers, or regularly salaried employees receiving no additional compensation therefor, or its wholly owned subsidiary or officers, partners, managers, or regular salaried employees thereof receiving no additional compensation, with respect to property located in Colorado which is owned or leased by such corporation, partnership, or limited liability company and on which has been or will be erected a shopping center, office building, or industrial park when such shopping center, office building, or industrial park is sold, leased, or otherwise offered for sale or lease in the ordinary course of the business of such corporation, partnership, limited liability company, or wholly owned subsidiary.

§ 12–61–101(2)(b)(IV), (VII), (IX), (X), (XI)(A), C.R.S.2008 (formerly codified at § 12–61–101(4)(d), (g), (i), (j), (k)).

▪ When the exceptions are read in conjunction, it is clear that a business entity—like an individual—may act on its own behalf to acquire property or sell property that it owns without having to obtain a real estate broker license. The exclusion set forth in

section 12–61–101(2)(b)(XV) specifically addresses the situation where a business entity, acting through its officers, partners, or regularly salaried employees, sells property located in Colorado that it owns to a purchaser that "is in the business of developing land for residential, commercial, or industrial purposes." None of the exclusions allows a third party to acquire property for a business entity or sell a business entity's property without obtaining a real estate broker's license.

Amedeus reads "with respect to property" as *any property* located in Colorado regardless of whether it is owned by the business entity. Under Amedeus's interpretation of the statutory exclusion set forth in section 12–61–101(2)(b)(XV), any business entity could act through one of its officers, partners, or regularly salaried employees to sell property in Colorado so long as they were selling the property to a real estate developer. We conclude that this interpretation would lead to an illogical and absurd result in light of the purpose of the brokerage statutes.

Here, during the time of the transaction, neither Amedeus nor Kotlarek was an officer, partner, or regularly salaried employee of McAllister. Thus, the exclusion set forth in section 12–61–101(2)(b)(XV) does not apply here. In addition, because it is undisputed that neither Amedeus nor Kotlarek was, at any relevant time, an officer, partner, or regularly salaried employee of, or otherwise affiliated with, the ultimate buyer of the Viewpoint Village Project, the other exclusions set forth in section 12–61–101(2)(b) do not apply.

In sum, the facts in the record before us unquestionably establish that Kotlarek acted as a real estate broker within the definition set forth in section 12–61–101(2); that Kotlarek and Amedeus were not licensed real estate brokers as required by section 12–61–102; and that none of the exclusions is applicable to Amedeus or Kotlarek. Thus, the agreement constituted an illegal contract and was unenforceable as a matter of law, and the trial court did not err in denying Amedeus's motion to compel arbitration and in dismissing its complaint.

## II. Quantum Meruit

Amedeus urges that it should have been entitled to recover for the reasonable value of Kotlarek's services under the doctrine of quantum meruit or quasi-contract. We do not agree.

Compensation for services is not recoverable where the subject transaction is forbidden by law. *Goodfellow,* 533 P.2d at 60; *see also Benham,* 122 Colo. at 241, 221 P.2d at 1082. Amedeus contends that, even if the agreement is illegal, it nevertheless should be compensated for the services Kotlarek rendered with respect to water rights issues related to the project. Because this argument was raised for the first time in Amedeus's reply brief, we need not address it. *See Barrett v. Inv. Mgmt. Consultants, Ltd.,* 190 P.3d 800, 805 (Colo.App.2008). We note, however, that the agreement does not provide or contemplate that, as part of its compensation, Amedeus would handle water rights issues related to the project. Rather, the underlying nature of the agreement related to Kotlarek's efforts to find investors or purchasers for the Viewpoint Village Project. All Kotlarek's efforts with respect to the water rights issues related to the underlying agreement to find investors or purchasers for the Viewpoint Village Project. In other words, but for the agreement, Amedeus would not have assisted McAllister in resolving water rights issues related to the project. Any contract that might be implied in this regard is derivative of the basic agreement between the parties and thus unenforceable. *See Goodfellow,* 533 P.2d at 60.

## III. Fraud

Finally, Amedeus contends that the trial court abused its discretion by failing to make findings on its allegations of fraud. However, Amedeus did not plead a cause of action based on fraud or request relief on that ground. Nor were the pleadings amended at the hearing to include a fraud claim. Thus, we conclude that the trial court did not abuse its discretion in failing to make findings regarding the elements of fraud.

## IV. Attorney Fees

In view of our disposition, we deny Amedeus's request for attorney fees. *See Forest View Acres Water Dist. v. Colo. State Bd. of Land Comm'rs,* 968 P.2d 168, 173 (Colo.App. 1998). Furthermore, because we do not deem Amedeus's appeal to be substantially frivolous, groundless, or vexatious, we reject McAllister's request, pursuant to section 13–17–102, C.R.S.2008, and C.A.R. 39.5, for an award of attorney fees incurred in defending against this appeal. *See Grynberg v. Phillips,* 148 P.3d 446, 450 (Colo.App.2006).

The order is affirmed.

Judge BERNARD and Judge BOORAS concur.