2014 COA 118

**ROCKY MOUNTAIN NATURAL GAS, LLC, Plaintiff–Appellant,**

v.

**The COLORADO MOUNTAIN JUNIOR COLLEGE DISTRICT, Defendant–Appellee.**

**Court of Appeals No. 13CA1136**

Colorado Court of Appeals,
Div. VI.

Announced September 11, 2014

Lathrop & Gage LLP, Thomas D. Leland, Leah E. Capritta, Kevin E. Strom, Denver, Colorado; SourceGas LLC, Timothy J. Knapp, Golden, Colorado, for Plaintiff–Appellant.

Sullivan Green Seavy, LLC, Barbara J.B. Green, John T. Sullivan, Boulder, Colorado, for Defendant–Appellee.

Opinion by JUDGE BOORAS

¶ 1 Plaintiff, Rocky Mountain Natural Gas, LLC (RMNG), appeals the summary judgment entered in favor of defendant, the Colorado Mountain Junior College District (CMC). We affirm.

## I. Background

¶ 2 This dispute arises from a lease agreement between RMNG and CMC. RMNG is a Colorado utility company that provides natural gas services. CMC is a junior college district organized under sections 23–71–101 to –133, C.R.S.2013. As relevant here, the board of trustees of a junior college district has the power to "[r]ent or lease district property not immediately needed for its purposes for terms not exceeding three years." § 23–71–122(1)(e), C.R.S.2013.[1]

---

1. Section 23–71–122(1)(d), C.R.S.2013, authorizes a junior college district to "[s]ell and convey

¶ 3 In August 2011, RMNG and CMC entered into a lease allowing RMNG to construct and operate a natural gas compressor station on CMC property. Despite the statutory three-year term limit on CMC's authority to lease district property, the lease included an initial term of twenty years, with an option for RMNG to extend the lease for an additional twenty-year term. After the lease was executed, RMNG purchased equipment, incurred fees, and took other action related to the construction of the compressor station. According to RMNG's complaint, RMNG spent approximately $2.5 million in reliance on the lease. RMNG also made payments to CMC pursuant to the lease. During March and April of 2012, a dispute arose over the terms of the lease.

¶ 4 In May of 2012, CMC's board of trustees voted to not recognize the lease, and CMC refunded the payments it had received from RMNG. Thereafter, RMNG sued CMC, seeking a declaratory judgment that the lease was valid, specific performance of the lease, damages as an alternative form of relief for multiple breaches of the lease, and preliminary and permanent injunctive relief.

¶ 5 CMC moved to dismiss RMNG's claims, contending in part that the lease was void, invalid, and unenforceable as a matter of law, because the term of the lease exceeded CMC's statutory authority.

¶ 6 The district court dismissed RMNG's claim for specific performance and determined that the remainder of CMC's motion to dismiss must be treated as a motion for summary judgment.[2] In a subsequent order, the district court held that the lease was void and unenforceable because CMC lacked statutory authority to enter into the lease: "Here, the applicable statute unambiguously limits CMC's power to enter leases to a term of three years or less. The 20–year lease involved in this case exceeded the statutory authority held by CMC." Additionally, the court rejected RMNG's contention that, pursuant to a severability clause in the lease, the

lease should be enforced for three years, even if it is not enforceable for twenty years.

¶ 7 As to RMNG's claim for damages, the court determined that RMNG was not entitled to judicial relief. The court discussed the decision in *Normandy Estates Metropolitan Recreation District v. Normandy Estates, Ltd.*, 191 Colo. 292, 553 P.2d 386 (1976), in which the Colorado Supreme Court created a limited exception to the general rule that recovery is not afforded to parties that have entered into unenforceable contracts with municipalities. *See also La Plata Med. Ctr. Assocs. v. United Bank*, 857 P.2d 410, 417–18 (Colo.1993). The district court ruled:

Where the absence of relief would be "grossly inequitable[,]" . . . the limited relief of restoring the private contracting party to its property [can] be granted. Here, CMC returned the lease payment made by RMNG. Although the result may be harsh, under the rule of *Normandy,* the absence of relief is not grossly inequitable.

¶ 8 Thus, the court granted summary judgment in favor of CMC, ruling that CMC's lack of authority to enter into the lease renders immaterial the other disputed issues of fact.

¶ 9 On appeal, RMNG contends that the district court erred as a matter of law in granting summary judgment in favor of CMC.

## II. Standard of Review

¶ 10 We review de novo a district court's grant of summary judgment. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo.2002). In so doing, we may determine only whether the law was correctly applied and whether a genuine issue of material fact exists. *Sims v. Sperry*, 835 P.2d 565, 568 (Colo.App.1992); *see also* C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988). In deciding whether summary judgment is appropriate, the court views the facts in the light most favorable to the nonmoving party.

---

district property . . . and lease any such property, pending sale thereof, under an agreement of lease, with or without an option to purchase the same." Because the instant case does not involve the purchase or sale of district property, subsection (1)(d) is not controlling here.

**2.** On appeal, RMNG does not challenge the denial of its request for specific performance.

*See Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 240 (Colo.2009).

### III. Validity of the Lease

#### A. The Entire Lease Is Invalid

¶ 11 RMNG first contends that the district court erred by determining that the lease was entirely void and unenforceable. We perceive no error.

¶ 12 CMC is authorized to contract as a municipal corporation. *See* § 23–71–120, C.R. S.2013 (authorizing junior college districts to hold property and be parties to suits and contracts "the same as municipal corporations in this state"). Statutorily created government entities, including municipalities, may exercise only those powers that are expressly conferred by the General Assembly or that exist by necessary implication. *S. Fork Water & Sanitation Dist. v. Town of S. Fork*, 252 P.3d 465, 469 (Colo.2011). A contract with a municipality is void if there is no statutory provision permitting such a contract. *See, e.g., Mountjoy & Frewen v. Cheyenne Cnty. High Sch. Dist.*, 78 Colo. 162, 164, 240 P. 464, 464 (1925) (where no statutory provision permitted the plaintiff's express contract with a school district, the plaintiff was not entitled to recover on the express contract); *see also* 10 Eugene McQuillin, *The Law of Municipal Corporations* § 29:2 (3d ed., rev.vol.2009) (a contract beyond the scope of a municipality's powers is ultra vires and unenforceable, and no further inquiry is necessary).

¶ 13 Statutory construction presents a question of law that we review de novo. *S. Fork*, 252 P.3d at 468. The primary objective in construing a statute is to effectuate the intent of the General Assembly. *Id.* If the statutory language is clear, a court should interpret the statute according to its plain and ordinary meaning. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo.2010).

¶ 14 Section 23–71–122(1)(e) governs the lease in this case. As noted above, that section provides that junior college districts "shall have the power to ... [r]ent or lease district property ... for terms not exceeding three years." It follows from the plain language of the statute that junior college districts have no power to lease district property for any term longer than three years.

¶ 15 On appeal, RMNG concedes that the lease in this case exceeded three years. However, RMNG contends that "the district court should have enforced the Lease up to CMC's statutory authority to enter it, making the Lease a binding contract for a three-year term."

¶ 16 The parties do not cite, and we have not found, Colorado authority directly addressing the issue presented here. Although RMNG relies on authorities from other jurisdictions concerning municipal contracts covering a period of time longer than a statutorily authorized period, these cases do not present similar circumstances as in this case.

¶ 17 For example, in *Town of Highlands v. Weyant*, 38 A.D.2d 256, 329 N.Y.S.2d 58, 59 (1972), a municipality contracted for water supply and sewer services with each of four districts "for so long as the said district exists," even though a municipal ordinance limited such contracts to a period not in excess of forty years. The New York appellate court declined to declare the contract void on the basis that it "might" extend for too long a period, and instead construed the contract as valid for the permissible period. *Id.* Thus, in *Weyant*, the court was asked to construe an indefinite duration term—as long as the district exists. However, in the present case, the contract duration term was a definite and unambiguous twenty years.

¶ 18 In *Washington County Board of Education v. MarketAmerica, Inc.*, 693 S.W.2d 344, 345 (Tenn.1985), a school board was seeking to avoid a seven-year contract by arguing that it had been without authority to enter into a contract requiring the expenditure of money beyond the annual budget for the fiscal year. The Tennessee Supreme Court concluded that this type of contract was not outside the contractual capacity of the school board. *Id.* at 348. However, unlike in the present case, no statute expressly limited the contractual authority of the school board.

¶ 19 Finally, the circumstances presented here are distinguishable from situations in several older cases cited by RMNG, in which services had already been provided under

852

contracts drafted for terms longer than authorized by statute. *See City Council of Montgomery v. Montgomery Water Works,* 79 Ala. 233 (Ala.1885) (where city had the power to contract for a supply of water for a single year, to the extent that a longer duration contract had already been executed, it would be construed as a year-to-year contract, even though it was *ultra vires* as to the part yet to be executed); *Cartersville Improvement, Gas & Water Co. v. City of Cartersville,* 89 Ga. 683, 16 S.E. 25, 26–27 (1892) (where city could not contract for gas or water for a period longer than one year, a contract for a longer term was operative only from year to year); *Columbus Water Co. v. City of Columbus,* 48 Kan. 99, 28 P. 1097, 1102–03 (1892) (where water works company had been providing water for four years under unauthorized twenty-one-year contract with city, contract would not be declared "void," and would instead be upheld for a "reasonable time," but not for "any particular period of time").

¶ 20 We conclude that the better view here is that the contract is entirely void. "A fundamental requirement for the enforcement of a municipal contract is that the municipality must have exercised its authority to enter into the contract within the scope of the powers conferred by statute." *Miller v. Marshall Cnty.,* 641 N.W.2d 742, 750 (Iowa 2002); *see* 10A Eugene McQuillen, *The Law of Municipal Corporations* § 29:91 (3d ed., rev.vol.2009). Enforcement of a contract that exceeds the authorized scope of powers would undermine the legislative choice of the General Assembly in enacting the statute. *See City of Wellston v. Morgan,* 59 Ohio St. 147, 52 N.E. 127, 130 (1898) (noting that the purpose of a statutory limit on the duration of contracts for lighting "is to inhibit such contracts entirely, for the only certain way of insuring their nonenforcement is to prevent their attempted execution"); *see also Smith v. McCullough,* 270 U.S. 456, 464–65, 46 S.Ct. 338, 70 L.Ed. 682 (1926) (where Quapaw Indian's lease contravened legislative restrictions, in that it was for a longer term than ten years, the lease was not invalid only as to

the excess period of time, but rather was entirely void).

¶ 21 In addition to undermining the legislative intent behind the statute, construing such contracts to be enforceable, even if only for the statutorily authorized period, would amount to the court rewriting the parties' agreement. A court may not make a new contract for the parties or rewrite their contract under the guise of construction. 11 Richard A. Lord, *Williston on Contracts* § 31:5 (4th ed. 1993). Here, the agreement between RMNG and CMC provided for a lease of property, at an agreed price, for a period of twenty years, with an option to extend the lease for twenty more years. The purpose of the lease was to allow the construction and operation of a natural gas compressor station on CMC's property.[3] CMC did not agree to lease its property in this manner for a period of only three years. Thus, shortening the duration term so that it complies with the statute would amount to reformation of the contract, and would be an inappropriate remedy here.

¶ 22 Citing to *Affordable Country Homes, LLC v. Smith,* 194 P.3d 511, 515 (Colo.App.2008), RMNG argues that "[r]eformation is permissible when there was a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct." True, the parties here were both mistaken as to the length of the period for which CMC was authorized by statute to lease its property. However, this "mistake" did not result in a contract that failed to state the parties' intended agreement. Rather, the written lease clearly expressed the parties' agreement to a duration term of at least twenty years. "Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions." *Md. Cas. Co. v. Buckeye Gas Prods. Co.,* 797 P.2d 11, 13 (Colo.1990). "The evidence must clearly and unequivocally show that reformation is appropriate under the circumstances." *Id.*

**3.** According to RMNG's complaint, "[a] compressor station consists of one or more buildings, with the princip[al] building containing one or more compressors and compressor engines connected to the underground pipeline. The smaller buildings are a maintenance building, a control building, and a utility building."

¶ 23 The evidence does not clearly show that CMC desired to lease the property for a term less than the twenty-year term stated in the agreement with RMNG. Thus, we conclude that it was within the discretion of the district court to reject reformation of the contract as an appropriate equitable remedy. *See id.* ("A court may not, through reformation, impose liability based on a term of the contract that is contrary to the expectations of the parties and not the subject of their prior agreement."); *see also* Restatement (Second) of Contracts § 155, cmt. b (1981) ("If ... the parties make a written agreement that they would not otherwise have made because of a mistake other than one as to expression, the court will not reform a writing to reflect the agreement that it thinks they would have made.").

### B. The Duration Term of the Lease Is Not Severable

■ ¶ 24 The lease between RMNG and CMC contained the following savings clause: "If any part, term or provision of this Lease is ... held to be illegal, void, or unenforceable, or to be in conflict with the law of the state in which said land lies, the validity of the remaining provisions or portion hereof shall not be affected."

■ ¶ 25 RMNG contends that the district court erred when it refused to enforce the lease for a three-year term in accordance with this clause. RMNG asserts that the clause reflects the parties' intent, and that the law permits courts to sever the ultra vires portion of an agreement and enforce the valid portions. RMNG asks this court to find that the portion of the duration term that would not violate the statute (the first three years of the term) is valid and that the remaining seventeen-year portion is the only invalid part. Contract interpretation is a question of law that we review de novo. *Vu, Inc. v. Pac. Ocean Marketplace, Inc.*, 36 P.3d 165, 167 (Colo.App.2001).

¶ 26 RMNG has cited no authority to support the theory that changing the duration term from twenty years to three years constitutes a permissible "severance" of part of the contract. *See Walters v. Vill. of Colfax*, 466 F.Supp.2d 1046, 1055–56 (C.D.Ill.2006) (declining to apply a severability clause to rewrite the duration term of an employment contract to exclude 7.5 years so that the contract would not violate a municipal ordinance).[4]

¶ 27 Moreover, we conclude that, because the contract in its entirety is void, having been made absent statutory authority, there is no contract from which any portion can be severed. *See Miller*, 641 N.W.2d at 752 ("Because the contract in its entirety is void, there is nothing left to sever.... [N]either the separability clause in the lease agreement nor the general doctrine of separability can save the municipal contract in this case.").

¶ 28 Accordingly, we affirm the district court's determination that the term of years could not be reformed and that the entire lease was therefore void and unenforceable.

### C. Equitable Estoppel Is Not Available

■ ¶ 29 RMNG next contends that the district court erred "by refusing to estop CMC from defending its breach by arguing that one ultra vires portion of the lease—the 20–year term—rendered it void in its entirety." Again, we perceive no error.

■ ¶ 30 The doctrine of equitable estoppel is based on principles f fairness, and it may be invoked against municipalities to prevent manifest injustice. *See Tarco, Inc. v. Conifer Metro. Dist.*, 2013 COA 60, ¶ 39, 316 P.3d 82. When applicable, equitable estoppel bars a municipality from taking a position contrary to a previous representation reasonably relied upon by the party dealing with the municipality to the party's detriment. *Fueston v. City of Colorado Springs*, 713 P.2d 1323, 1325 (Colo.App.1986). Whether the circumstances of a particular case involve representation and reasonable reliance giving rise to equitable estoppel are questions of fact. *Tarco*, ¶ 39.

4. The instant case is distinguishable from *CapitalValue Advisors, LLC v. K2D, Inc.*, 2013 COA 125, 321 P.3d 602, relied upon by RMNG, in which a contract was capable of being severed because it contained multiple agreements, some of which could not be legally performed. *Id.* at ¶¶ 27–28.

¶ 31 However, where a contract is void because it is not within a municipality's power to make, the municipality cannot be estopped to deny the validity of the contract. 10 Eugene McQuillen, *The Law of Municipal Corporations* § 29:14 (3d ed., rev.vol.2009); *see Cent. Transp. Co. v. Pullman's Palace Car Co.*, 139 U.S. 24, 60, 11 S.Ct. 478, 35 L.Ed. 55 (1891) (noting that when a corporation enters into a contract that "is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws").

¶ 32 Estoppel is not available here, even though RMNG detrimentally relied upon the municipal contract by making expenditures. *See* 10A Eugene McQuillen, *The Law of Municipal Corporations* § 29:104.30 (3d ed., rev.vol.2009). "The rationale supporting this well-established principle is that those who contract with a municipality are charged with notice of the limits on the authority of the municipality." *Miller*, 641 N.W.2d at 751. If the party fails to take notice of the statutory limits, the party is bound at the party's own peril. *Id.*

¶ 33 Because CMC had no power to lease district property for any term exceeding three years, principles of estoppel do not apply against CMC under the circumstances presented here. Accordingly, the district court did not err when it allowed CMC to deny the validity of the lease.

## IV. Equitable Relief

¶ 34 RMNG next contends that, even if the lease is void for lack of statutory authority, the district court erred because it "failed to follow the mandates of [*Normandy* ] and [*La Plata* ] when it refused to hold a hearing or make factual findings that would permit it to craft a remedy which 'fully compensated' RMNG for CMC's breach." RMNG requests that this court reverse the summary judgment order "to permit RMNG the opportunity to present evidence of its detrimental reliance and other factors." We conclude that RMNG was not entitled to a hearing on damages and was fully compensated under *Normandy* and *La Plata*.

¶ 35 In *Normandy*, the plaintiff, a private corporation, contracted with a metropolitan district for the purchase and sale of property. 191 Colo. at 293–94, 553 P.2d at 387. Although the district had authority to enter such a contract, the contract was invalid for failure to obtain the approval of the eligible electors of the district. *Id.* at 295, 553 P.2d at 388. The question for the court was whether, under the circumstances presented, one who contracts with a municipal entity may successfully invoke equitable relief when the municipality refuses to either perform the contract or to return to the plaintiff the consideration it received. *Id.*

¶ 36 In resolving this question, the court created an exception to the general principle of law that prohibited all recovery under such circumstances: "We hereby adopt what appears to be the prevailing rule: that where property is furnished to a municipal corporation under an unenforceable contract, and the municipality has not paid for the property, then the seller or person supplying the property may, upon equitable terms, recover it in specie." *Id.* at 296, 553 P.2d at 389; *see also La Plata*, 857 P.2d at 418. The court also concluded that, under the facts of that case, "it would be grossly inequitable to permit the district to continue to enjoy the benefits of the contract without fully compensating [the private corporation]." *Normandy*, 191 Colo. at 297, 553 P.2d at 389–90; *see also La Plata*, 857 P.2d at 418 (noting this conclusion).

¶ 37 RMNG contends that, under the holdings of *Normandy* and *La Plata*, the district court was required to craft an equitable remedy to "fully compensate" RMNG for the damages and harm it suffered as a result of CMC's breach of the lease. RMNG's reliance on these cases is misplaced.

¶ 38 In *Normandy*, the district sought to retain the benefit it received under the void contract without providing compensation to the private corporation. There, the court allowed the corporation to recover either the specific property transferred pursuant to the contract or the value of the property, notwithstanding the fact that the contract was void. 191 Colo. at 296, 553 P.2d at 389 (rule applies "where property is furnished to a municipal corporation under an *unenforcea-*

*ble contract"* (emphasis added)). In *La Plata*, the supreme court discussed and applied the equitable remedy announced in *Normandy*. *La Plata*, 857 P.2d at 417–18.

¶ 39 The district's liability in *Normandy* was based not on contract law but on a theory of restitution. 191 Colo. at 297, 553 P.2d at 389; *see also Chapman v. Bd. of Cnty. Comm'rs*, 107 U.S. 348, 355–56, 2 S.Ct. 62, 27 L.Ed. 378 (1883) (where an agreement failed by reason of the county's legal inability to perform, the other contracting party had a right to seek restitution for the value of the benefit it conferred); *Fairbanks, Morse & Co. v. City of Wagoner*, 86 F.2d 288, 291 (10th Cir.1936) (where the city accepted materials under an ultra vires contract, it was required to make restitution or render an equivalent therefor). Restitution and damages based on breach of contract are different:

> Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain in order to prevent the defendant's unjust enrichment. Restitution, which seeks to prevent unjust enrichment of the defendant, differs in principle from damages, which measure the remedy by the plaintiff's loss and seek to provide compensation for that loss.

*EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118 (Colo.1995) (citations and internal quotation marks omitted); *see also* Restatement (Third) of Restitution & Unjust Enrichment pt. II, ch. 4, intro. note (2011) (discussing the distinction between restitution and contract).

Under the principle that a person who is unjustly enriched at the expense of another is required to make restitution, the intentions of the parties have little or no influence on the determination of the proper measure of damages; in the absence of fraud or other tortious conduct on the part of the party enriched, restitution is properly limited to the value of the benefit received.

66 Am.Jur.2d *Restitution and Implied Contracts* § 166 (2001). Because the equitable remedy discussed in *Normandy* was based on restitution, there was no liability in excess of the benefit received. *See La Plata*, 857 P.2d at 418 (noting that, in *Normandy*, the recreation district had the option to either pay for or return the property in question but, under either option, it was released from any further liability).

¶ 40 Here, unlike the district in *Normandy*, CMC has not attempted to retain the value it received under the lease without compensating RMNG. Instead, it refunded the lease payments it received from RMNG. Accordingly, RMNG was fully compensated for the benefit it conferred upon CMC and the district did not err when it denied further relief and granted summary judgment in favor of CMC.

### V. Conclusion

¶ 41 The judgment is affirmed.

JUDGE ROMÁN and JUDGE RICHMAN concur.